

FILED

Jan 29 2024, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Casey A. Farrington
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Kenyonn Sincere,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 29, 2024

Court of Appeals Case No.
23A-CR-1172

Appeal from the Marion Superior
Court

The Honorable William J. Nelson,
Judge
The Honorable Mark F. Renner,
Magistrate

Trial Court Cause No.
49D18-2109-F6-30044

**Opinion by Judge Bradford**
Judges Weissmann and Foley concur.

**Bradford, Judge.**

# Case Summary[1]

[1] On August 31, 2021, Kenyonn Sincere falsely represented himself to be a detective with the Marion County Sheriff's Department to the owner of the Fundae's Ice Cream Shop ("the Shop") in Speedway. The State charged Sincere with Level 6 felony impersonating a law-enforcement officer. After a jury found Sincere guilty, the trial court entered a judgment of conviction as a Class A misdemeanor. Sincere appeals his conviction. We affirm.

# Facts and Procedural History

[2] At all times relevant to this appeal, Cassandra Miller owned the Shop. On August 31, 2021, Miller and Ashley Wagner were working at the Shop when a man, who was later determined to be Sincere, came in and indicated that he "was looking for a missing person." Tr. Vol. II p. 115. Sincere claimed to be a detective and asked Miller for the "security footage that [the Shop] had and receipts and just any information that we had from the day prior." Tr. Vol. II p. 115. Sincere was wearing a polo shirt with the words "Marion County" and/or "detective" printed on it and a badge on his waist. Tr. Vol. II pp. 116, 152.

[3] At Sincere's request, Miller accessed surveillance footage from the previous day and showed it to him. Sincere indicated that he was looking for a specific

---

[1] We held oral argument in this case on January 11, 2023, at Terre Haute South High School. We thank the students, administration, faculty, and staff of Terre Haute South for their hospitality. We also commend counsel on the quality of their arguments.

woman, and, when Sincere saw her on the surveillance footage, Sincere asked to see the receipt from her purchase, specifically a copy of the receipt that had a signature on it. Miller provided Sincere with a copy of the receipt but explained that the Shop no longer required signatures for credit- or debit-card purchases. Sincere "seemed surprised and disappointed that there wasn't a signature" from the man who had made the purchase on the receipt. Tr. Vol. II p. 138.

[4] Sincere asked for a copy of the surveillance footage and provided Miller with a telephone number and an email address where she could send the footage. The email address was "Duncan.Flagg@indy.gov," and Sincere wrote "Sgt." next to it. St. Ex. Vol. p. 3. Sincere hesitated before writing down the email address and said that he "always got his personal and his business email address[es] mixed up," so it "took him a second [to] write it down." Tr. Vol. II p. 125.

[5] After Sincere left, Miller conducted a Google search and discovered that although an individual named Duncan Flagg worked for Marion County, he was not the same person who had visited the Shop. Miller contacted the Speedway Police Department "to find out what [she should] do and if there was in fact a missing person." Tr. Vol. II p. 122. Speedway Police Detective Michael Hart called the number that Sincere had provided to Miller. No one answered but the number went to a voicemail recording which stated the caller had reached "Kenyonn Sincere Marion County Sheriff's Department." Tr. Vol. II p. 170.

[6]     On September 28, 2021, the State charged Sincere with Level 6 felony impersonating a law-enforcement officer. The case proceeded to a jury trial on March 9, 2023. During opening statements, the deputy prosecutor outlined the State's case, referring to each of its witnesses and providing an overview of the facts to which the deputy prosecutor expected the witnesses to testify. Sincere did not object to any of the deputy prosecutor's statements.

[7]     Sincere objected to various statements made by Detective Hart during his testimony relating to the course of his investigation into the matter. The trial court overruled Sincere's objections. In addition, both Miller and Detective Hart testified that although they had each found a photograph of an individual named "Duncan Flagg" who worked for Marion County, neither had found a photograph of anyone named "Duncan Flagg" that looked like Sincere. Although Sincere objected to Miller's testimony on the subject, which objection was overruled, he did not object to Detective Hart's testimony on the subject.

[8]     During closing arguments, the deputy prosecutor again provided an overview of the State's case, referring to the witnesses and the facts as they were testified to by the witnesses. The deputy prosecutor argued that the State's evidence had proven that Sincere had falsely claimed to be a detective named Duncan Flagg and had done so with the intent that Miller would provide him with certain information. Sincere objected to, and the trial court struck, an additional comment indicating that the woman in the video was Sincere's wife and that Sincere had been checking to see if she had been at the Shop with another man.

[9] On rebuttal, the deputy prosecutor again argued that Sincere had "misrepresented who he was to get the information," and Sincere objected on the basis that the prosecutor allegedly was stating facts that were not in evidence. Tr. Vol. II p. 208. The trial court overruled that objection, finding that the argument was "a fair argument based on" the evidence. Tr. Vol. II p. 208. Sincere again objected, and the trial court sustained the objection, when the deputy prosecutor stated that Sincere was "not a detective with the Marion County Sheriff's Department." Tr. Vol. II p. 209.

[10] Following its deliberations, the jury found Sincere guilty as charged. The trial court subsequently entered judgment of conviction as a Class A misdemeanor, sentenced Sincere to a 365-day suspended sentence, and ordered him to pay a $500.00 fine.

# Discussion and Decision

## I. Admission of Evidence

[11] Sincere first contends that the trial court abused its discretion in admitting certain evidence during trial.

> Generally, a trial court's ruling on the admission of evidence is accorded a great deal of deference on appeal. Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and only reverse if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015) (internal citations and quotations omitted).

## A.  Hearsay

"'Hearsay' means a statement that:  (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted."  Ind. Evidence Rule 801(c).  "Hearsay is not admissible unless these rules or other law provides otherwise."  Evid. R. 802.  A statement made by an opposing party, however, is not hearsay.  *See* Evid. R. 801(d)(2)(A). Further, "[o]ut-of-court statements made to law enforcement are non-hearsay if introduced primarily to explain why the investigation proceeded as it did." *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014).  "[C]ourse-of-investigation testimony is excluded from hearsay only for a limited purpose:  to 'bridge gaps in the trial testimony that would otherwise substantially confuse or mislead the jury.'"  *Id.* (quoting *Jones v. Basinger*, 635 F.3d 1030, 1046 (7th Cir. 2011)).

### 1.  *Sincere's Identification in Voicemail Recording*

Sincere claims that Detective Hart's testimony about what he had heard when he had called the telephone number provided by Sincere to Miller was impermissible hearsay as it recounted an out-of-court statement allegedly made by Sincere.  For its part, the State claims that the outgoing voicemail message was not hearsay, but rather was a statement made by a party-opponent, which is not hearsay.  *See* Evid. R. 801(d)(2)(A).  We agree with the State.

[14] The evidence establishes that Sincere had provided Miller with a telephone number at which he claimed she could reach him and, in the voicemail box associated with this telephone number, Sincere had identified himself on the outgoing voicemail message not as Duncan Flagg but as Kenyonn Sincere. This statement was a statement by a party-opponent as it was made by Sincere and was communicated via the telephone number that he had claimed to be his. The statement, therefore, was not inadmissible hearsay.

### 2. *Course-of-Investigation Testimony*

[15] Sincere also claims that Detective Hart's testimony was inadmissible as it was "almost entirely about what other people told him" and "introduced to bridge gaps in the State's case." Appellant's Br. pp. 19, 24. For its part, the State argues that Sincere "has not shown that [Detective Hart's testimony was] not admissible under the course-of-investigation exception." Appellee's Br. p. 18. The State further argues that "Sincere's claim that course-of-investigation testimony subjected him to some sort of unfair risk that the jury would rely upon that evidence for the truth of the matter asserted is not well founded." Appellee's Br. p. 18.

[16] The trial court made it clear that the challenged testimony was being admitted solely as course-of-the-investigation testimony and not for the truth of the matter asserted. Moreover, as the State points out, both Miller and Wagner had testified and been cross-examined at trial before Detective Hart testified, and the jury had been able to determine their credibility, "which had generally been admitted for the truth of the matter asserted, before [Detective Hart]

summarized what they told him as part of his investigation." Appellee's Br. p. 19.

[17] Even if the trial court had erred in admitting the challenged testimony, "[a]n error in admitting evidence does not require reversal unless it affects the substantial rights of a party." *Pelissier v. State*, 122 N.E.3d 983, 988 (Ind. Ct. App. 2019), *trans. denied*.

> The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. The erroneous admission of evidence may also be harmless if that evidence is cumulative of other evidence admitted.

*Id*. (internal citation and quotation omitted).

[18] Without deciding whether the trial court abused its discretion in admitting Detective Hart's testimony, we conclude that its admission was, at most, harmless. Detective Hart's testimony was largely duplicative of Miller's and Wagner's testimony. Again, Miller testified that Sincere had claimed to be a detective for the Marion County Sheriff's Department who had allegedly been investigating a missing-persons case. He had been dressed in a manner consistent with how an on-duty detective would dress, had had what appeared to be a law-enforcement badge on his hip, and had identified himself in writing as Sgt. Duncan Flagg, providing an email address for Flagg. Miller notified the Speedway Police Department after she had determined that the individual who

had come into the Shop was not the only individual named Duncan Flagg who appeared to be employed by Marion County. Furthermore, to the extent that Detective Hart's testimony went beyond these facts to indicate that the Marion County Sheriff's Department does not have a missing-persons division, such fact was irrelevant to the question of whether Sincere had impersonated a detective.[2]

## B. Identification Evidence

[19] Sincere also argues that the trial court abused its discretion by admitting testimony relating to Miller's and Detective Hart's determinations that Sincere was not Duncan Flagg, claiming that its admission violated various evidentiary rules. Sincere, however, has waived this challenge because he did not object to testimony relating to Miller's and Detective Hart's determinations that Sincere was not Duncan Flagg on the challenged grounds at trial. *See Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018) ("A party's failure to object to an alleged error at trial results in waiver."); *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011). ("[A] defendant may not argue one ground for an objection to the admission of evidence at trial and then raise new grounds on appeal.").

[20] Sincere attempts to avoid the effects of his waiver by claiming fundamental error.

---

[2] Because we conclude that admission of Detective Hart's testimony was harmless, we need not consider Sincere's alternative argument that the testimony amounted to impermissible vouching testimony.

> Fundamental error is an error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. Fundamental error applies only when the actual or potential harm cannot be denied. An appellate court receiving contentions of fundamental error need only expound upon those it thinks warrant relief. It is otherwise adequate to note that the claim has not been preserved.

*Clark v. State*, 915 N.E.2d 126, 131–32 (Ind. 2009) (internal citations and quotation omitted).

[21] Sincere argues that a fair trial was impossible because Miller claimed to have located the picture of Duncan Flagg that she had looked at via Google, which Sincere asserts "is not an inherently reliable source." Appellant's Br. p. 31. Sincere notes that the record "does not indicate where Detective Hart saw the photo." Appellant's Br. p. 32. As such, he asserts that "[n]either witness could have authenticated the photo pursuant to Indiana Evidence Rule 901." Appellant's Br. p. 32. We need not determine whether the trial court abused its discretion in admitting Miller's and Detective Hart's testimony regarding the photographs because this testimony was cumulative of other evidence that Sincere was not Flagg. Again, Sincere identified himself as Kenyonn Sincere on the voicemail-box recording for the telephone number that he had provided Miller.[3] Thus, admission of the challenged evidence was cumulative of other

---

[3] To the extent that Sincere asserts that Miller's and Detective Hart's testimony was prejudicial because no other evidence supported the finding that Flagg is a law-enforcement officer, we note that the question of whether Flagg is a law-enforcement officer is irrelevant to the question of whether Sincere impersonated a law-enforcement officer. Stated differently, Flagg's status or non-status as a law-enforcement officer has no

properly admitted evidence and therefore harmless. *See Pelissier*, 122 N.E.3d at 988.

## II. Prosecutorial Misconduct

[22]     Sincere next contends that the deputy prosecutor committed prosecutorial misconduct.

> When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. We then consider whether the alleged misconduct placed the defendant in a position of grave peril to which she should not have been subjected. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct.
>
> A prompt objection to alleged prosecutorial misconduct allows the trial court an opportunity to prevent or remedy any prejudice to a defendant without the waste of time and resources involved in the reversal of a conviction. If a defendant does not object to the alleged misconduct, any claim of error is waived. In addition to objecting to alleged misconduct, a defendant must also request an appropriate remedy. In general, the correct procedure involves a request for an admonishment. If trial counsel is not satisfied that an admonishment will be sufficient to cure the error, then counsel may move for a mistrial. The failure to

---

effect on the fact that Sincere had identified himself to a member of the public as a detective engaged in an active investigation.

> request either an admonishment or mistrial results in waiver of the issue.

*Collins v. State*, 966 N.E.2d 96, 106 (Ind. Ct. App. 2012) (internal citations and quotations omitted). "Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error." *Id.*

[23] Sincere argues that "[b]y planning to rely on inadmissible evidence to make its case and repeatedly arguing facts not in evidence during closing arguments, the [deputy prosecutor] engaged in misconduct." Appellant's Br. p. 34. Sincere seems to acknowledge that he failed to preserve his claims of prosecutorial misconduct, arguing that the misconduct had placed him in a position of grave peril that resulted in fundamental error. He asserts that the misconduct "had a profound impact on the jury" and "[t]he probable persuasive effect of the misconduct was especially powerful here, where evidence of guilt was scant." Appellant's Br. p. 38.

[24] To the extent that Sincere's prosecutorial-misconduct claim is based upon his assertion that the State relied on inadmissible evidence in its opening and closing arguments, Sincere cannot prove error, much less fundamental error given our conclusion that the challenged evidence was either admissible or that its admission was harmless. As for the other allegedly improper statements made during opening and closing arguments, even if such statements amounted

to misconduct (which they did not), the misconduct did not constitute fundamental error because the trial court properly instructed the jury that it could not rely on any arguments made by counsel as such statements were not evidence. *See Pruitt v. State*, 622 N.E.2d 469, 473 (Ind. 1993) (providing that we presume on appeal that the jury followed the instruction of the trial court).[4]

## IV.   Sufficiency of the Evidence

[25]   Finally, Sincere contends that the evidence is insufficient to sustain his conviction.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

---

[4] Having concluded that the trial court did not abuse its discretion in admitting the challenged evidence and that the prosecutor did not commit prosecutorial misconduct, we reject Sincere's claim that the cumulative effect of the claimed errors required reversal. *See Lucas v. State*, 499 N.E.2d 1090, 1098 (Ind. 1986) ("Alleged errors which do not present a single basis for reversal do not gain the stature of reversible error when viewed *en masse*.") (emphasis in original).

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (cleaned up). Stated differently, in reviewing the sufficiency of the evidence, "we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility" and "affirm the judgment unless no reasonable factfinder could find the defendant guilty." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016).

[26] In order to prove that Sincere had committed impersonating a law-enforcement officer, the State was required to prove that Sincere "with the intent to: (1) deceive; or (2) induce compliance with the person's instructions, orders, or requests;" falsely represented that he is a law-enforcement officer. Ind. Code § 35-44.1-2-6(a); -6(b). The General Assembly has defined a "law enforcement officer" in this context as:

> (1) a police officer (including a tribal police officer, a correctional police officer, and a hospital police officer employed by a hospital police department established under IC 16-18-4), sheriff, constable, marshal, prosecuting attorney, special prosecuting attorney, special deputy prosecuting attorney, the securities commissioner, or the inspector general;
>
> (2) a deputy of any of those persons[.]

Ind. Code § 35-31.5-2-185(a). The State concedes that although judgment of conviction was entered as a Class A misdemeanor, "the State was required to show that Sincere falsely represented himself to be a law enforcement officer, not just a public servant in general." Appellee's Br. p. 33.

[27] Sincere argues that under the statute, "[a] law enforcement officer who pretends to be a different law enforcement officer does not falsely represent their status as a law enforcement officer." Appellant's Br. p. 46. Thus, he claims that the State was required to prove that he is not a law-enforcement officer. Sincere, however, has pointed to no authority that supports his reading of the statute, acknowledging that "[c]aselaw is silent on this point." Appellant's Br. p. 45.

[28] The State disagrees with Sincere's reading of the statute, claiming that

> [b]y claiming that the State had to disprove that Sincere was a law enforcement officer, Sincere appears to be suggesting that there is some sort of immunity for people who are already law enforcement officers to commit the crime of impersonating a public servant, but he has not identified any legal support for that claim.

Appellee's Br. p. 35. The State further claims that

> Sincere's reading of the statute would have all sorts of unintended consequences, including authorizing law enforcement officers to operate outside their jurisdiction by falsely claiming to be a law enforcement [officer] within that other jurisdiction with the intent to deceive or induce compliance. His misreading of the statute would also permit one public servant to impersonate someone from another agency, or even from another federal, state, or local government simply because they were a public servant somewhere. There is no reason to believe that the legislature would have intended this sort of absurd result.

Appellee's Br. p. 36. We agree with the State. The plain language of Indiana Code section 35-44.1-2-6 requires only that the defendant, with the intent to

deceive or induce action, falsely represents that he is a law-enforcement officer. Upon review, we have found nothing in Indiana law to support Sincere's assertion that the State should have also be required to disprove that he was a law-enforcement officer before it could prove that he had violated Indiana Code section 35-44.1-2-6, and we reject Sincere's invitation to adopt such a requirement.

[29] We next turn our attention to whether the State's evidence was sufficient to sustain Sincere's conviction. In *Ferree v. State*, 124 N.E.3d 109, 112 (Ind. Ct. App. 2019), *trans. denied*, the evidence established that Ferree had (1) entered a mental-health facility, wearing a jacket with the Vigo County Sheriff's Department's logo on the front and the word "Sheriff" on the back; (2) identified himself as "John Wilson" and affiliated himself with the Sheriff's Department; and (3) requested assistance for an inmate in the Vigo County Jail. We affirmed Ferree's conviction, concluding that "[t]he only reasonable interpretation of the totality of the evidence – Ferree's appearance; his request, which was commonly made by a law enforcement officer; the fact he gave a false name; and Dougherty's testimony that he identified himself as a deputy – is that Ferree impersonated a law enforcement officer." *Id.* at 114.

[30] Likewise, in *Poole v. State*, 559 N.E.2d 1214, 1216 (Ind. Ct. App. 1990), we concluded that the evidence was sufficient to support the defendant's conviction for impersonating a law-enforcement officer, citing the following evidence:

> Poole had gone to Wishard requesting treatment for injuries he claimed to have incurred while acting as a police officer. A nurse

> testified that as she was preparing the paperwork to discharge Poole, he requested a work release form and told her that he was a police officer with IPD and supplied her with the identification numbers for his badge, unit, supervisor, vehicle, and district.

(Internal record cites omitted).

[31] Like in *Ferree* and *Poole*, in this case, the evidence most favorable to the jury's guilty finding supports the jury's determination that Sincere had impersonated a law-enforcement officer. Again, Miller testified that Sincere had claimed to be a detective for the Marion County Sheriff's department who had been allegedly investigating a missing-persons case. Sincere had been dressed in a manner consistent with how an on-duty detective would dress, *i.e.*, wearing a polo that read "Marion County" and/or "detective" and what appeared to be a law enforcement badge on his hip and identifying himself in writing as Sgt. Duncan Flagg, providing his name and an apparent email address for Flagg. Tr. Vol. II pp. 116, 152. When giving Miller the email address for Duncan Flagg, Sincere indicated that "he always got his personal and his business email address[es] mixed up so that's why it took him a second to -- to write it down because he wanted to make sure he was giving his business" email address, implying that the address belonging to Flagg belonged to him. Tr. Vol. II p. 125. Miller's testimony also supports the reasonable inference that Sincere had made the representations with the intent to induce her compliance with his request for surveillance footage and a copy of the requested receipt. The evidence is

sufficient to sustain Sincere's conviction.[5] Sincere's claim to the contrary effectively amounts to an invitation to reweigh the evidence, which we will not do. *See Griffith*, 59 N.E.3d at 958.

[32] The judgment of the trial court is affirmed.

Weissmann, J., and Foley, J., concur.

---

[5] Sincere also claims that the trial court erred by denying his motion for a directed verdict. A directed verdict is appropriate only when there is a total lack of evidence regarding an essential element of the crime or when the evidence is without conflict and supports an inference in favor of innocence. *See Edwards v. State*, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007), *trans. denied*. Sincere relied on his sufficiency argument in support of his claim that the trial court erred in denying his motion for a directed verdict. Given that we rejected this argument and instead concluded that the evidence is sufficient to sustain his conviction, we further conclude that Sincere has failed to prove that the trial court erred in denying his motion for a directed verdict.